Lewis H. Ross v. Commissioner.
Lewis H. Ross v. Commissioner
Docket No. 9993.
United States Tax Court
1947 Tax Ct. Memo LEXIS 316; 6 T.C.M. (CCH) 124; T.C.M. (RIA) 47024; February 10, 1947
*316 John R. McLane, Esq., 40 Stark St., Manchester, N.H., and Stanley M. Brown, Esq., for the petitioner. John T. Rogers, Esq., and Leo C. Duersten, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of deficiencies in income tax for the years 1939, 1940, and 1941, in the respective amounts of $2,647.22, $3,543.80, and $2,797.13. The issues presented are whether respondent erred in including in petitioner's income for the years in question amounts which he received in those years from his employer, such amounts being attributable to petitioner's activities for previous years but not paid or reported in those years; whether petitioner was in constructive receipt of such income in the earlier years; and whether petitioner can be regarded as being on the accrual basis for the years in question. By stipulation filed by the parties subsequent to the hearing it is agreed that: If the Court should find that for the taxable years 1939, 1940 and 1941 the petitioner was upon the accrual basis of accounting for income tax purposes, and should further find that said amounts which were added *317 by the Commissioner to the petitioner's taxable income for the said years are taxable income to the petitioner only in the year 1939 and that all of said amounts should be included in petitioner's taxable income for the year 1939, then and in that event the Court may find that there is a deficiency in income tax for the year 1939 in the amount of $6,611.15 and that there are no deficiencies in income tax for the years 1940 and 1941. The facts were presented by a stipulation and by evidence adduced at the hearing. Those facts hereinafter appearing which are not from the stipulation are otherwise found from the record. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner has his principal office in Manchester, New Hampshire, and filed his Federal income tax returns with the collector of internal revenue for the district of New Hampshire. For the years 1927 to 1938, inclusive, his returns were filed on a cash receipts and disbursements basis. In December, 1925, petitioner, recently graduated from college and a school of business administration, entered the firm of E. M. Chase Company, Inc. in Manchester, New Hampshire, under the terms of an agreement *318 with his uncle, Edward M. Chase, who was then the sole owner of the business. The company engaged in the retail instalment sale of furniture and household appliances. The company at that time was capitalized at $110,000, consisting of 100 shares of $100 par value common stock and 1,000 shares of 6 per cent preferred, and had a surplus of $38,000. By the terms of petitioner's agreement with his uncle, the $38,000 surplus was capitalized into preferred stock and issued to his uncle. The agreement, effective January 4, 1926, also recited and provided as follows: NOW THEREFORE, it is agreed as follows: The said Ross agrees to buy and the said Chase agrees to sell one-half of the common stock of said Company for the sum of Five Thousand Dollars. It is understood that the above price for one-half of the common stock of said Company has been fixed as a result of the sale of certain portions of the assets of said Company and other adjustments of capital as herein set forth. It is agreed that said Company is to purchase from said Chase Ten Thousand Dollars of the preferred stock of said Company each year at par and accrued dividends, but it is further agreed that the failure of said *319 Company to make said purchase by reason of financial inability or otherwise shall not be a waiver of any other part of this agreement. It is agreed that after all the preferred stock of said Chase is retired said Chase agrees to sell to said Ross the balance of the common stock of said Company, the price of same to be fixed by taking the lease accounts of the Company, other than those payable within thirty or sixty days, at Seventy-Five Cents on the dollar and the rest of the assets of the Company at One Hundred Cents on the dollar. It is further agreed that in case of the death of said Chase the said Ross shall have the right to buy the common stock of said Chase in said Company upon the foregoing terms. It is agreed that for two years after this date the said Chase is to draw One Hundred Dollars each week as salary and the said Ross is to draw Seventy-Five Dollars each week as salary and that no other payments for services are to be made during that period to either of them and that thereafter the salaries to be paid said Chase and Ross shall be determined by mutual agreement but that said salaries after said period of two years are to be equal. It is understood and agreed *320 that said Ross shall devote his whole time and energy to the business of said Company and that said Chase shall hereafter devote only such time to said Company as he may voluntarily give. * * *
It is agreed that in case of the death of said Chase and the purchase by said Ross of all the common stock of said Company prior to the retirement of the preferred stock held by said Chase the executors, administrators or trustees under the will of said Chase shall have an equal voice with said Ross in the management and conduct of said Company until all of the preferred stock of said Chase has been retired. * * *
The transfer of the 50 shares of stock to petitioner, as provided in the agreement, took place on or before February 13, 1926. On or about January 4, 1926, it was voted to increase the capital stock to $148,000, consisting of $138,000 6 per cent preferred and $10,000 common stock. Of the $138,000 of preferred stock outstanding after this transfer, Chase held $94,000, and $44,000 was held by the company and its employees. Partial retirement of the preferred stock pursuant to the December 30, 1925 agreement took place as follows: Dec. 31, 1926 Balance outstanding of preferred stock
$138,000
1928 Cash paid E. M. Chase for 250 shares
$25,000
1930 Cash paid E. M. Chase for 80 shares
8,000
Mar. 31, 1931 Cash paid E. M. Chase for 16 shares
1,600
July 31, 1931 Cash paid E. M. Chase for 144 shares
14,400
Apr. 1932 Notes issued to Chase for 450 shares
45,000
Notes issued to Chase for 28 1/2 shares
2,850
Total retired
96,850
Bal. April 30, 1932
41,150
On books as preferred stock
44,000
On books as preferred stock - Reserve (Treas. stock)
2,850
Net outstanding preferred stock 12/31/33
41,150
None of this balance of 41,150 is owned by E. M. Chase
*321 The notes issued to Chase for the retirement of preferred stock, referred to in the foregoing schedule, were paid by the Company on various dates between October, 1932 and December, 1934. The provisions for the salaries of the petitioner and Chase in the agreement of December 30, 1925, were changed by an agreement between petitioner, Chase and the Company, dated January 1, 1927, which reads in part as follows: It is agreed that the salary of Edward M. Chase, as President of said corporation shall be fixed at the sum of Ten thousand four hundred Dollars ($10,400) per annum, beginning January 1, 1927; and that the salary of Lewis H. Ross, as Vice President of said corporation shall be fixed at Seven thousand eight hundred Dollars ($7,800) beginning January 1, 1927. It is further agreed that one-half of the salaries aforesaid shall be paid in cash, weekly, and that the remaining one-half shall be credited weekly on the books of said Company to said Chase and said Ross, but allowed to remain in the treasury of said corporation as working capital until the preferred stock of said corporation now held by Edward M. Chase shall all be redeemed, at which time the balance due said Chase *322 and Ross for salaries under this agreement, as shown by the books of the Company shall become due and payable. On January 2, 1928, another agreement was entered into between these parties relative to the salaries of petitioner and Chase, which agreement provided in part as follows: It is agreed that the salary of Edward M. Chase, as President of said corporation shall be fixed at the sum of Seventeen thousand five hundred Dollars ($17,500) per annum, beginning January 1, 1928; and that the salary of Lewis H. Ross, as Vice President of said corporation shall be fixed at the sum of Ten thousand Dollars ($10,000) per annum, beginning January 1, 1928. It is further agreed that on account of said salaries there shall be paid to said Edward M. Chase the sum of Seventy-five ( $75) Dollars in cash weekly; and to the said Lewis H. Ross the sum of Seventy-five ( $75) Dollars in cash weekly; and that the remainder of said salaries shall be credited weekly on the books of said Company to said Chase and to said Ross, but allowed to remain in the treasury of said corporation as working capital until the preferred stock of said corporation now held by Edward M. Chase shall all be redeemed, *323 at which time the balance due said Chase and Ross for salaries under this agreement, as shown by the books of the Company, shall become due and payable. The terms of the salary agreements of January 1, 1927, and January 2, 1928, were carried out by the parties, and petitioner and Chase withdrew only a portion of their salaries in cash with the remainder being accrued upon the books of the Company. The following schedule shows petitioner's annual salary, the amounts paid him in cash and the amounts of salary accrued upon the books of the Company to his credit for the years 1927 to 1932, inclusive: Year Ended
Salary
Withdrawn
Accrued
Dec. 31, 1927
$ 7,800
$ 3,900
$ 3,900
Dec. 31, 1928
10,000
3,900
6,100
Dec. 31, 1929
10,000
4,800
5,200
Dec. 31, 1930
10,000
5,100
4,900
Dec. 31, 1931
10,000
5,100
4,900
Dec. 31, 1932
9,400
4,500
4,900
$57,200
$27,300
$29,900
For the years 1927 to 1932, inclusive, petitioner only included in his Federal income tax returns the amounts of salary actually paid to him. No part of the $29,900 salaries accrued to petitioner's credit upon the books of the Company as of December 31, 1932, has been included *324 in any Federal income tax return filed by him and no Federal income tax has been paid thereon. For the years 1927 to 1932, the Company having filed its Federal corporation income tax returns upon the accrual basis of accounting, claimed and was allowed deductions for the full amount of salaries paid and for the salaries accrued to petitioner. For the years 1933 and 1934, petitioner included in his Federal income tax returns only the amount of salary paid to him by the Company and did not include the amounts accrued on the books to his credit. Upon examination of petitioner's returns for these years and on about August 3, 1936, respondent added to petitioner's gross income the amount of his current salary accruals for 1933 and 1934, which adjustment was accepted by petitioner. For all subsequent years petitioner included in his income tax returns the salary paid, plus the salary accrued upon the books. The letter of August 3, 1936, from the Office of the Commissioner of Internal Revenue, signed by J. M. Kennedy, Representative, Technical Staff, to petitioner, and referring to a "Waiver in the amount of deficiency inserted in your case" enclosed a copy of a report of the Revenue *325 Agent which stated: Since a claim for bona fide salary has precedence over the retirement of preferred stock, it follows that the reversed procedure followed in this case could have been done only with the consent of the taxpayer who not only had a complete knowledge of all these procedures but actually was a party in arranging them. The entire salary from E. M. Chase Company is therefore included in income of the current year in accordance with the following decisions: W. H. Jacobris v. U.S., W. S. Ct. of Cls. * * * ; . In 1932 the last of the preferred stock of the Company owned by Chase was redeemed by the issuance to Chase of notes in payment for the preferred stock. The redemption of the preferred stock owned by Chase removed the prohibition against paying in full the current salaries of Chase and petitioner as provided in the agreements of January 1, 1927, and January 2, 1928. Chase was more or less in charge of the financial operations of the Company, and petitioner's opinions somewhat reflected his. He advised petitioner that at the time the 1933 and 1934 returns were under investigation *326 it was his opinion that the Company could not pay the accrued salaries, and that was petitioner's belief. As of December 1, 1932, the accrued salaries of Chase and petitioner amounted to $98,400. As of that date the Company had an overdraft of $477.09, the accounts receivable were $265,393.95 and the surplus was $62,994.84. The Company had a line of bank credit of $50,000. It had a policy of not selling its accounts receivable, which could have been sold, and the only accounts receivable ever sold by the Company were sold to Chase under the agreement of December 30, 1925. During 1926 and 1931 the Company's accounts receivable increased from $187,000 to $298,000. It financed these accounts out of surplus. During the period 1932-1934, both accounts receivable and surplus were somewhat reduced. There was also a reduction of its notes payable from $63,000 to $4,000. During the period 1935 to 1941, surplus increased from $70,000 to $225,000; accounts receivable grew to $447,000, and notes payable were negligible. The following schedule shows the yearly salary of petitioner, the amount of current salary withdrawn and the amount of current salary accrued upon the books of the Company *327 to his account during each of the years 1936 to 1941, inclusive: Year
Salary
Withdrawn
Accrued
1936
$13,800
$7,800
$ 6,000
1937
13,800
7,800
6,000
1938
17,800
7,800
10,000
1939
20,000
7,800
12,200
1940
25,000
7,800
17,200
1941
25,000
8,400
16,600
In addition to the cash paid to petitioner on account of current salary in the years 1936 to 1941, inclusive, petitioner withdrew during those years the following amounts: Withdrawals from
Year
Accrued Account
1936
$ 707.22
1937
592.72
1938
604.01
1939
13,007.85
1940
9,447.70
1941
12,755.01
In his income tax returns for the years 1936 to 1941, inclusive, petitioner reported as salary received from the Company the amount of current salary paid, plus the current accruals for each year, but did not report as income any part of the withdrawals made from the accrued account in these years. On each of petitioner's returns for the years 1939, 1940, and 1941, under the question asked thereon as to whether the return was filed upon a cash receipts and disbursements basis or upon an accrual basis, a check-mark was put in the square indicating that the return was filed *328 upon an accrual basis. The returns for these years were not prepared personally by petitioner but were prepared by his accountant. Petitioner executed the returns and filed them with the collector. Petitioner has not submitted an application to respondent for permission to change the basis of filing his income tax returns from a cash receipts and disbursements basis to an accrual basis. For the years 1939, 1940, and 1941, petitioner was upon an accrual basis for income tax purposes. In his notice of deficiency respondent said: The cash withdrawn by you during the taxable years 1939, 1940 and 1941 in the respective amounts of $13,007.85, $9,447.70 and $5,545.50, which was charged to your personal account on the books of E. M. Chase Company, * * * has been added to your income as reported for these years since the amounts represent the payment of accrued salaries credited to your account during the years 1927 to 1932, inclusive, and not previously reported as taxable income. Opinion For some period in the earlier history of petitioner's association with the Chase Company he was credited with more salary than he actually received, and thus built up a substantial account payable *329 by the company. During the same period, petitioner did not report anything but actual cash receipts for income tax purposes. Upon inquiry into the situation by respondent, it was finally concluded and agreed that for some of the past years and for the future petitioner was to be taxed upon the full amount credited to him as annual salary upon the theory, as both parties assert, of constructive receipt. There were, however, unpaid salary items on the books for the earliest years for which adjustment was not made, and on which tax was never paid. The situation continued until 1939, the first tax year here under consideration when petitioner, who had previously been on the cash basis, executed and filed his return stating that it was made upon the accrual method. Similar action was taken for the other two years involved. Although petitioner did not ask for leave to make this change, respondent by proffered amendment to his amended answer proposed to rely upon the fact that petitioner was on an accrual basis for 1939 in order to sustain the deficiency for that year, as well as a specific claim for an increased deficiency. His present consent to the change must therefore be presumed. *330 See , affirmed this issue (C.C.A., 2nd Cir.), . The only evidence we have on the subject is this statement in the returns. But neither the returns themselves nor any part of the record is inconsistent with this conclusion. We have accordingly found as a fact, because such evidence as there is indicates it without contradiction, that petitioner was on an accrual basis for the years here involved. A shift in 1939 to an accrual method of accounting would make it appropriate to require that petitioner's accounts receivable for salary due should be included as income for that year, since otherwise, whenever collected in cash, they would escape taxation under petitioner's accrual accounting. . The parties have stipulated that upon such a determination a deficiency in the amount of $6,611.15 may be determined for 1939, with a determination of no deficiencies for 1940 and 1941. That disposition makes unnecessary any discussion of the ground on which respondent's position was originally founded, that because of petitioner's *331 cash system, his receipt in cash of payments recorded as being out of the past-due salary account constitutes presently taxable income. Accordingly, Decision will be entered that there is a deficiency of $6,611.15 for 1939 and none for 1940 and 1941.