[No. B020199. Second Dist., Div. One. June 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVID MARGHZAR, Defendant and Appellant.

1132

---

COUNSEL

Darlene Weinhold, under appointment by the Court of Appeal, and Javid Marghzar, in pro. per., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Joan Comparet, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LUCAS, J.—By information appellant was charged with two counts: violation of section 556, subdivision (a)(1) of the Insurance Code, presenting a fraudulent claim, and violation of Penal Code section 487, subdivision 1, grand theft. In a trial by jury, appellant was convicted on both counts. Probation was denied and appellant was sentenced to state prison. Appellant appeals this judgment. We affirm.

## BACKGROUND

On February 7, 1985, appellant applied for a bank loan to purchase a certain 1984 Porsche automobile, model 911. The loan officer inspected the car and observed a vehicle identification number (VIN) which he entered on a form. Appellant received a cashier's check for $30,000 from the bank. On February 17, 1985, appellant applied to Progressive Insurance Company (Progressive) for insurance on a 1984 Porsche 911. When Progressive ran a check on the VIN supplied by the appellant, which was the same number as that copied by the bank's loan officer, Progressive concluded that the vehicle was a 1983 Porsche, model 944, a less expensive model than the 911. Progressive insured the vehicle for $20,175. On the evening of June 4, 1985, appellant went to a police station and reported that his vehicle had been stolen. On arriving at his residence at 3811 Donna, Tarzana, later that night, appellant was met by plainclothes police officers who, under a search warrant, had been investigating activities at 3815, a residence next to that of the appellant. Based on certain evidence found in a Porsche discovered at 3815 Donna and on information the officers had received from the police department indicating that appellant had reported his vehicle stolen, a detective informed appellant that his vehicle had been found. Appellant denied that the Porsche was his vehicle. On June 6, appellant filed an affidavit of loss with Progressive Insurance Company. On August 8, 1985, appellant accepted a draft from Progressive made out to the bank and to appellant for $20,500. After accepting the draft, appellant was arrested.

## ISSUES

Appellant contends the following: 1. The trial court erred when it held that the formula for determining the "check digit" of a motor vehicle identification number is privileged and thereby violated appellant's constitutional right to confront witnesses.

2. Testimony by police officers as to uncharged acts was prejudicial error.

3. The evidence was insufficient to sustain a conviction on count one, a violation of Insurance Code section 556, subdivision (a)(1).

4. The evidence was insufficient to sustain a conviction on count two, a violation of Penal Code section 487, subdivision 1.

5. The court denied appellant a reasonable amount of bail on appeal and thus abused its discretion.

6. The sentence of three years for violation of Insurance Code section 556, subdivision (a)(1) was excessive.

## DISCUSSION

■ 1. *Claimed privilege not to disclose "check digit" formula.* At trial, Detective Toland testified as an expert witness that the ninth number in a VIN is the so-called "check digit." It is determined by the application of a mathematical formula to the preceding eight digits. An incorrect check digit indicates that the VIN has been changed since the vehicle left the manufacturer. Detective Toland further testified that he had applied the formula to the VIN given by appellant to Progressive and that the check digit of that VIN was incorrect. When asked what formula he used, the witness responded that he could not disclose it "because then anybody can counterfeit the number."

Mr. Lessiak, employed by the National Auto Theft Bureau, a nonprofit service organization funded by the insurance industry for the purpose of assisting law enforcement agencies with fraud, arson, and theft investigations, also testified as an expert witness. He stated that a VIN describes the various attributes of a vehicle and that a secret formula yields a check digit in the ninth position to determine whether a VIN is valid or fictitious. During the investigation of this case at the request of Officer Toland, Mr. Lessiak applied the formula to the VIN appellant had given Progressive. Mr. Lessiak determined that the VIN was a fictitious number, specifically that the "7" in the ninth position should have been a "1". Mr. Lessiak refused to disclose the formula in open court on the basis that it is protected by the Evidence Code.

Appellant contends that as a result of the assertion of the privilege not to disclose the check digit formula, he was improperly deprived of his constitutional right to confront witnesses.

Evidence Code section 1040 provides in relevant part: "(a) As used in this section, 'official information' means information acquired in confidence by a

public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice ...."

Section 1040 was invoked in *In re David W.* (1976) 62 Cal.App.3d 840 [133 Cal.Rptr. 342], wherein a police officer and a special agent of the National Automobile Theft Bureau, the latter having been appointed by the trial court as an independent expert witness, testified as to a VIN but refused to disclose its secret location in an allegedly stolen vehicle. Counsel for defendant moved to strike the special agent's testimony on the ground that his appointment did not satisfy due process requirements of section 1042 of the Evidence Code, which provides for an in-camera hearing under certain circumstances. The motion was denied and the minor was found guilty of grand theft auto (Pen. Code, § 487, subd. 3). The Court of Appeal affirmed. It first held that the privilege was properly invoked. The court stated that "[t]o allow public knowledge of the location of the secret identification number would destroy its very purpose and would remove a valuable investigatory device that may lead to the discovery of vehicle thefts." (*In re David W., supra,* 62 Cal.App.3d at p. 847.) The court further held that an in-camera hearing was not necessary because the trial court had conducted the very kind of examination that the defendant's counsel had sought to make to ascertain whether the police witness had correctly reported the VIN, "and satisfied itself that no further examination would, or could, produce anything material to the defense." (*Ibid.*)

In the case at bar it is clear that if the formula which produces the check digit were revealed, an important investigatory tool would be destroyed. Thus, disclosure of the information is against the public interest. Further, the extensive examination and cross-examination of both Mr. Lessiak and Detective Toland regarding the VIN to which the formula had been applied made it clear that the VIN each used was the same as that copied by the loan officer and given by appellant to Progressive. No evidence offered at trial indicated that the revelation of the formula would have aided appellant's defense. Under the facts of this case, the necessity for preserving the

confidentiality of the information outweighed appellant's interest in disclosure.

■ 2. *Testimony by police officers regarding uncharged acts.* Detective Toland testified that "The property that was seized at that location next door to [appellant] encompassed an investigation which involves considerably more than we are talking about here." He also testified that more than seven impound reports had been completed for the vehicles taken into custody that night and that the paperwork relating to that investigation filled almost 12 loose-leaf binders. Appellant contends that the above testimony resulted in undue prejudice in that it invited jurors to imagine that appellant was a member of a ring of auto thieves. At trial, appellant did not object to the statement quoted above. Generally, an error is deemed waived if the defendant does not make an appropriate objection at trial. (*People v. Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) The issue may be raised for the first time on appeal if the trial court could not have cured the harm by a prompt admonition to the jury. (*Ibid.*) In the case at bar, defense counsel elicited the quoted statement regarding the scope of the other investigation when questioning the witness regarding alleged inaccuracies and discrepancies in police reports which purported to list property observed to be in appellant's possession the night of June 4. Had appellant objected to the statement, the court could have promptly and adequately instructed the jury that the testimony given regarding the scope of the other investigation was not evidence that appellant was a subject of that investigation and that no such inferences should be drawn. ■■■■■ Such an instruction would have cured the harm appellant contends resulted from the testimony. Therefore, this issue cannot now be raised on appeal.[1]

■ At trial, appellant did object to the testimony as to the number of impound reports and the volume of documents related to the other investigation on the grounds of relevancy. We find no error in the trial court's overruling these objections. The court had previously admonished the police officers not to testify regarding the other investigation and the other vehicles involved in that investigation. These witnesses were repeatedly instructed by the court out of the presence of the jury as to how to handle questions which might reveal details of the other investigation. The subject was discussed in numerous sidebar conferences. The trial court warned defense counsel that his line of questioning was invited error which would preclude appellant from raising the issue on appeal. (*People v. Wickersham* (1982) 32 Cal.3d 307, 330 [185 Cal.Rptr. 436, 650 P.2d 311].)

---

[1] All the testimony of which appellant complains was in response to defense counsel's vigorous pursuit throughout the trial of a potentially meritorious defense based on alleged discrepancies and inaccuracies in various police reports. Because defense counsel's line of questioning had a rational tactical purpose, appellant had adequate assistance of counsel. (See *People v. Fosselman* (1983) 33 Cal.3d 572, 581 [189 Cal.Rptr. 855, 659 P.2d 1144].)

Defense counsel acknowledged the risk but pursued the subjects as a tactical necessity in order to point out discrepancies in the police department reports.

During direct examination, defense counsel "opened the door" by continually questioning witnesses as to the contents of various reports. The questions could not be accurately answered without reference to criminal activity unrelated to the case. In the absence of a complete answer, inferences could be drawn that the witnesses had either made serious errors or were lying. Thus, the testimony given in response to efforts of the prosecution to rehabilitate a witness was relevant.

A careful reading of the testimony reveals that the witnesses exhibited caution and strict adherence to the court's admonition regarding how far they could go in answering questions posed by defense counsel. Only after defense counsel acknowledged the risk in the sidebar conference,[2] and in response to a prosecution attempt to rehabilitate a witness, were the responses appellant objects to allowed.

In light of the strenuous questioning by defense counsel, we find no error. Even if we were to find error here, we find no harm from it in light of the overwhelming evidence of guilt.

　　3. *Sufficiency of the evidence: insurance fraud.* Appellant contends that the evidence was insufficient to convict him under Insurance Code section 556, subdivision (a)(1) (hereinafter, 556(a)(1)). 　　The appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

　　At the time of appellant's arrest, 556(a)(1) provided in pertinent part as follows: "(a) It is unlawful to: [¶] (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance. . . ." An intent to defraud is an essential element of the offense and it may properly be determined from a consideration of all the circumstances. (*People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1025 [95 Cal.Rptr. 405].) "One who willfully submits a claim, knowing it to be false,

---

[2] DEFENSE COUNSEL : "What I would like to have happen is him to respond to my question. If I ask something that opens the door, that's what is going to happen. The door is open. . . . [¶] What my position is: is if I ask a question and it opens the door, then they are entitled to pursue that."

necessarily does so with intent to defraud." (*Id.*, at p. 1026.) ▮▮ In the presence of an insurance broker, appellant filled out and signed insurance application forms containing a fictitious VIN and describing the vehicle to be insured as a 1984 Porsche 911. The broker verified the VIN with the lending bank. When Progressive checked the number, it was discovered that it described a 1983 Porsche 944. When the broker brought the discrepancy to the attention of appellant, appellant explained that there had been a mistake. Appellant accepted an insurance policy for $20,175 on a 1983 Porsche 944 although he had received a loan of more than $30,000 to purchase a 1984 Porsche 911.

Appellant never presented the vehicle to the insurance broker for close inspection. Instead, appellant pointed to a vehicle in a locked area of a car dealership after business hours and explained to the broker that it was there to be painted. The broker was too far away to tell whether the Porsche he saw was a 911 or a 944. At the request of the broker, appellant provided the broker with photographs of the Porsche to confirm the condition of the vehicle. The photographs depicted a model 944.

On the evening during which appellant reported his vehicle stolen, police officers acting under a search warrant for an address next to appellant's residence discovered a Porsche containing documents bearing appellant's name: personal checks (bearing a different address from that of appellant's current residence at 3811 Donna); an insurance policy; a check from an insurance company made out to appellant; and a TWA travel certificate which bore the 3811 Donna address as well as appellant's name. There were also several photographs of a woman. It was later discovered that the subject of the photographs was appellant's girlfriend. She later identified the Porsche as belonging to appellant. Information obtained through police channels indicated that a Porsche with a description similar to the one found had been reported stolen by appellant. The VIN on the vehicle found had been obliterated; a set of number dies were found under the driver's seat.

Officers went to appellant's address and informed him that his vehicle had been recovered. The appellant appeared to be shocked by this information. When shown the vehicle, he denied that it was his. Later, appellant's sister arrived at his residence. Detective Toland testified that the woman ran toward the detective yelling, "What are you doing to my brother and why are you taking his Porsche?" At trial, appellant's sister denied that she had asked, "why are you taking his Porsche?"

Although appellant was not informed by the police that the VIN had been removed from the vehicle, at a later interview, appellant stated to a

detective, "You can't prove that's my car you found in the carport. It doesn't have any ID numbers on it."

On the night of June 4, appellant had in his possession various documents relating to the ownership and registration of the vehicle which he had reported stolen. Detectives were unable to locate either of two people listed as previous owners on the documents. There were other inaccuracies and inconsistencies in the ownership documentation, including a title which bore the fictitious VIN.

It was eventually determined by the police that the Porsche discovered at the residence next to that of appellant, and which appellant denied was the vehicle he had reported missing, had been stolen from a Mr. Franklin. At trial, Detective Toland testified that the photos appellant provided Progressive disclosed two damage points in exactly the same location as that disclosed by a police photo of the Porsche discovered June 4.

On June 6, appellant filled out and signed an "Affidavit of Vehicle Theft" on which he wrote the fictitious VIN. To insure accuracy, an insurance investigator went over the information on the affidavit with appellant on three separate occasions.

In summary, we note that appellant was notified by the insurance company long before he filed a loss claim that the VIN he had presented did not comport with the description he had given of the vehicle he sought to insure. Nonetheless, appellant merely explained that a mistake had been made and accepted approximately $10,000 less coverage than he had sought. He later reported that the vehicle had been stolen and included the fictitious VIN on an affidavit of loss filed with Progressive, which set out the facts of the alleged theft.

We conclude that there was substantial evidence supporting the finding of the jury that appellant knowingly presented a false or fraudulent claim to an insurance company with the intent to defraud.

■ 4. *Sufficiency of the evidence: Grand theft by false pretenses.* The trial court instructed the jury that in order to find appellant guilty of grand theft by false pretenses under count two, the prosecution must prove the following elements: "1. That a person made or caused to be made to another person, by word or conduct, a promise without an intention to perform it or a false representation of an existing or past fact known to such person to be false or made recklessly and without information which would justify a reasonable belief in its truth,

"2. That such person made the representation or promise with the specific intent to defraud,

"3. That the false representation or promise was believed and relied upon by the other person and was a material cause of inducing him to part with his money or property even though the false representation or promise was not the sole cause, and

"4. That the fraud was accomplished in that the other person parted with his money or property intending to transfer ownership thereof." (CALJIC No. 14.10 (1979 Rev.)) On appeal, appellant contends that the evidence was insufficient to prove elements 3 and 4. Appellant bases his argument on the fact that the insurance company was informed by the police that appellant was being investigated, and he contends that appellant was only handed the check for the purposes of arrest. ■ "To support a false pretenses conviction, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded, in that he relied on the false representation in parting with his property. [Citations.]" (*People* v. *Randono* (1973) 32 Cal.App.3d 164, 172 [108 Cal.Rptr. 326]; in accord *People* v. *Fujita* (1974) 43 Cal.App.3d 454, 467 [117 Cal.Rptr. 757].) "The crime of grand theft is complete when a man takes property not his own with the intent to take it; and a defendant may be convicted of grand theft upon proof of facts establishing (a) embezzlement, (b) larceny or (c) obtaining property under false pretenses." (*People* v. *Corenevsky* (1954) 124 Cal.App.2d 19, 23 [267 P.2d 1048].)

■ The insurance investigator who handled appellant's claim testified that while she had some suspicions about the claim because of the difficulty she had in reaching appellant at telephone numbers he had given her, she did not have any other suspicious evidence in her file. She further testified that while the police advised her that Progressive was possibly the victim of an insurance fraud, she was not given any information about the police investigation. The police requested the investigator to advise them when appellant was going to come in to pick up the draft in settlement of the claim, and the investigator did so. The police did not instruct the investigator to give the draft to appellant.

On August 8, 1985, after a third and final review with appellant of the information on the affidavit of vehicle theft, the investigator handed appellant the draft and excused herself from the room. At this point, Detective Toland entered the room and arrested appellant. The testimony of the investigator that although suspicious, she had no evidence that the claim was false and that the police did not provide her with information on the

investigation constitutes substantial evidence that she relied on the misrepresentations in the affidavit of appellant when she handed the draft to him. Thus, element 3 is satisfied.

The language of the instruction on element 4 at issue here, *intending to transfer ownership thereof,* must be understood as language which distinguishes theft by false pretense from the crime of larceny by trick or device, wherein possession of the subject property but not title is transferred. Since the draft transferred title to the money, this element was satisfied when the investigator did indeed hand the draft to appellant. The investigator had no knowledge that the draft would be returned to Progressive, and such recovery is irrelevant.

■ 5. *Bail during appeal.* Appellant contends that the trial court abused its discretion when it set bail at $200,000 following imposition of sentence.

Admission to bail of a convicted felon is discretionary, and the ruling by the trial court on a motion for bail pending appeal is not to be disturbed unless a manifest abuse of discretion appears. (*In re Podesto* (1976) 15 Cal.3d 921, 929, 940 [127 Cal.Rptr. 97, 544 P.2d 1297].) Under Penal Code section 1275, the trial judge in fixing the amount of bail shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his appearing at the trial or hearing of the case. Appellant had been convicted on both felony counts. In 1984, appellant was convicted of a misdemeanor under Penal Code section 459, burglary, apparently receiving a year in county jail and a fine of $300. At the time of the bail hearing, appellant was the defendant in a civil action which alleged fraud in the sale of a vehicle, and was also under investigation by the Internal Revenue Service. Appellant is not a citizen of the United States. The trial judge weighed these factors and was greatly concerned that appellant "might not be around" if not committed immediately. The judge stated that he rarely insisted on immediate commitment, but felt it was justified in this case.

It is clear from the record that the trial court considered the relevant factors as set forth in Penal Code section 1275. We hold there was no abuse of discretion by the trial court in setting bail at $200,000 pending appeal.

■ 6. *Sentence of three years for insurance fraud.* Defendant contends the sentence was excessive because the crime was not one of violence and because he was convicted for a single act.

Because of the sophistication of the crime and the planning, the trial court contemplated sentencing appellant to the high term. However, it

balanced those factors against the minimal criminal record of appellant and decided on the midterm of three years. This procedure complies with that mandated by California Rules of Court, rule 439. There was no abuse of discretion.

## CONCLUSION

We hold that the check digit formula was protected from public disclosure at trial by Evidence Code section 1040, that the minimal testimony given by police officers regarding another investigation did not unduly prejudice appellant, that substantial evidence supported the findings of the jury on counts one and two, that bail pending appeal was not excessive, and that the midterm sentence of three years for insurance fraud was not an abuse of discretion by the trial court.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1987.