T.C. Memo. 2006-105


UNITED STATES TAX COURT



CAROL A. JOHANSON AND ALFRED F. MELZIG, JR., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No.  2490-05.                    Filed May 15, 2006.



        C and J entered into a Marital Settlement
Agreement in connection with a divorce terminating
their marriage, which was characterized as a marriage
of long duration under California law.  Cal. Fam. Law
Code sec. 4336 (West 2004).  The Agreement provided
that J would make monthly spousal support payments of
$5,250 each from a date specified in the Agreement
through October 31, 2010.  The Agreement contained no
provision regarding continuation or termination of the
payments in the event of C's death before November 1,
2010.  The Cal. Fam. Law Code, sec. 4337, provides that
in the absence of an agreement in writing, support
payments terminate upon the death of the payee spouse.
Sec. 71(b)(1)(D), I.R.C., provides that to constitute
alimony or separate maintenance payments, there must be
no liability to make any such payment for any period
after the death of the payee spouse.

<u>Held</u>:  Since J has no liability to make payments after the death of C, the periodic payments to C constitute gross income includable as alimony payments under sec. 71, I.R.C.  They are therefore taxable to C.

<u>Marjorie A. O'Connell</u>, for petitioners.

<u>Jeffrey E. Gold</u> and <u>Ann M. Welhalf</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, <u>Judge</u>:  By deficiency notice dated November 10, 2004, respondent determined a deficiency in petitioners' income tax for 2002 in the amount of $20,475, and a penalty under section 6662(a) and (b)(1) in the amount of $4,095.  Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for all relevant times hereunder.  Rule references are to Rules contained in the Tax Court Rules of Practice and Procedure.

Respondent concedes the aforementioned penalty. Consequently, the only issue remaining for decision is whether the payments totaling $63,000 which petitioner Carol A. Johanson (petitioner or Carol) received in 2002 from her former spouse, John Weiler (John), are taxable as alimony under section 71.

Petitioners resided in California when they filed their petition.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner and John (the Parties) were married on February 18, 1966, and separated on or about November 11, 1995. At the time of the separation, the Parties had one minor child, Seth Weiler, born May 14, 1980.

On December 15, 1995, the Parties each filed a petition in the Superior Court of California, County of Santa Clara, for dissolution of the marriage, which actions were then consolidated.

The Parties subsequently executed a Marital Settlement Agreement (Agreement), and the Superior Court thereafter, on August 12, 1996, entered a Judgment of Dissolution approving and incorporating by reference the Agreement. The Agreement recited that it was to be subject to and interpreted under the laws of California.

As required by the Agreement, John made payments to petitioner totaling $63,000 as "spousal support" in 2002.

The purpose of the Agreement is stated to be "to make a final and complete settlement of all rights and obligations arising out of our marital relationship". Among other things, the Agreement provides

--"[t]hat the terms of this Agreement constitute a fair and equal division of the assets and debts and that neither party owes an equalization payment to the other".

--carefully spelled out arrangements for child custody and support. These arrangements are separate and apart from the provisions for spousal support, see infra.

--that John would receive all of the stock of Sea Supreme, Inc., a company in which the Parties owned a 50-percent interest, and would hold Carol harmless from its debts and obligations. Carol agreed with John's valuation "in the vicinity of $1.2 million".

--Detailed provisions for spousal support.

The provisions for spousal support are as follows:

### IV.  SPOUSAL SUPPORT

25.  Each party is aware of the right of each party to receive spousal support from the other party based upon the relative income and needs of the parties and the duration of the marriage.

26.  Both parties are aware that this marriage is one considered and characterized as a marriage of long duration.  As a result, certain responsibilities for support may exist between the parties for some unknown length of time after separation and after a dissolution is entered unless both parties freely and voluntarily waive their rights to support and agree to the termination of the courts [sic] jurisdiction over the issue of spousal support.  Once this waiver and agreement is entered, it is non-reversible and may work a considerable hardship on either one or both of the parties.

26.  Being aware of the above, the court will retain jurisdiction over John's right to collect

spousal support from Carol until May 31, 2011 at which time his right to collect such support shall permanently terminate. This termination date is absolute and non-modifiable under any circumstances.

27. Being aware of the above, John agrees to pay spousal support to Carol in the amount of $5,250.00 per month beginning the first month following the sale of the residence (close of escrow). Spousal support shall be due, one-half on the first of each and every month and one-half on the 15th of each and every month. Spousal support shall continue at this amount through October 31, 2010 at which time Carol's right to collect spousal support from John will permanently terminate. This termination date is absolute and non-modifiable under any circumstances. Spousal support shall be payable by wage assignment which shall be issued along with the entry of the agreement as a Judgment. Service of the wage assignment is stayed unless and until John is ten (10) days or more late with any support payment. In the event John is ever ten (10) days or more late with any support payment, the wage assignment shall be served with no further notice to John.

28. The duration of spousal support is non-modifiable and the court will not have jurisdiction to modify the length of time John will pay spousal support to Carol. Specifically, the court does not have jurisdiction to award any spousal support payable from John to Carol for any period beyond October 31, 2010, regardless of the circumstances that may arise and regardless of whether any motion to modify spousal support is filed before, on or after October 31, 2010. The court also does not have jurisdiction to modify the amount of spousal support payable from John to Carol except for two circumstances, John's death, prolonged unemployment or John's disability. Upon John's death, spousal support will terminate permanently. Upon John's prolonged unemployment, the court has the jurisdiction to lower the amount of support for the length of the unemployment provided appropriate efforts are being made by John to find employment. Upon John's disability, the court has the jurisdiction to lower the amount of support for the length of the disability. Disability is defined as the inability to pursue an occupation because of physical or mental impairment. If such a modification is sought by John and ordered by the court, the court may increase or decrease the

amount of support as the circumstances warrant but under no circumstances does the court have the jurisdiction or the authority to raise spousal support over the amount of $5,250.00 per month.

MEDICAL INSURANCE

29.  Carol acknowledges that she is responsible from [sic] her own medical insurance and expenses
* * *.

OPINION

This case is another chapter in the long saga of cases decided by this Court involving the failure of parties to divorce settlement agreements to specify what happens to payments should the payee-spouse die.  See, e.g., Berry v. Commissioner, T.C. Memo. 2005-91; Kean v. Commissioner, T.C. Memo. 2003-163, affd. 407 F.3d 186 (3d Cir. 2005); Hoover v. Commissioner, T.C. Memo. 1995-183, affd. 102 F.3d 842 (6th Cir. 1996).  By failing to so specify, the divorce litigants simply abdicate making a serious financial decision that others may then make for them, as here.

John and Carol both testified in this case, and, unsurprisingly, their testimony was contradictory on most points. The testimony of the respective Parties was, for the most part, aimed at supporting, explaining, or modifying the express terms of the Agreement.  Consequently, we base our decision solely on the terms of the Agreement itself, rather than on any extrinsic evidence proffered by the Parties' testimony.

We must decide whether payments from John to Carol, in 2002, totaling $63,000, were alimony, a property settlement installment, or part of a guaranteed stream of payments for a fixed term to Carol or her estate.  In the Agreement, the payments were specifically denominated "spousal support".

Alimony or separate maintenance payments are taxable to the recipient (section 71(a)) and deductible by the payor (section 215(a)), so the proper characterization of the payments is very significant.  The correct tax treatment of any other type of payments, periodic or otherwise, is not at issue here.

Alimony or separate maintenance payments are defined in section 71(b), which provides:

SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a)  General Rule.  * * *

(b)  Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1)  In general.--The term 'alimony or separate maintenance payment' means any payment in cash if--

(A)  such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B)  the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C)  in the case of an individual legally separated from his spouse under a

decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The parties agree that the requirements of section 71(b)(1)(A), (B), and (C) have been met.  They disagree as to whether section 71(b)(1)(D) has been met.  That subparagraph requires that the payor spouse have no liability to make any payment for any period after the death of the payee spouse, or to make any substitute therefor after the death of the payee spouse.

Cal. Fam. Law Code sec. 4337 (West 2004) provides:

Sec. 4337.  Termination of support order; death; remarriage

Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party.

While the Parties made specific provision in the Agreement for termination or modification of spousal support in the event of John's death, or prolonged unemployment or disability, they made no provision regarding termination of support payments in the event of Carol's death.  Consequently, the California statute will apply should she die before November 1, 2010.  The support

obligation of John under the Agreement, which, as previously stated, was incorporated by reference into the Superior Court's Judgment of Dissolution, will terminate under the California statute if Carol dies during the term of his obligation.

Payments which are a property settlement are not taxable to the recipient under section 71. Hoover v. Commissioner, T.C. Memo. 1995-183, affd. 102 F.3d 842 (6th Cir. 1996). Petitioner seeks to convince us that "this stream of cash payments, totaling nearly $900,000, payable in 181 monthly installments, was for * * * [Carol's] 25 percent ownership interest in * * * Sea Supreme".

There is nothing in the Agreement that remotely connects the $5,250 monthly spousal support payments to Carol to her interest in Sea Supreme. The Agreement recites that John estimated the value of Sea Supreme to be "in the vicinity of $1.2 million", and that "Carol agrees with this valuation". Since, previous to the divorce, Carol owned 25 percent of Sea Supreme, the value of her interest would be in the neighborhood of $300,000, a far cry from the total support payments Carol expected to receive under the Agreement.

The Agreement recites, under "EQUALIZATION PROVISION", that "the Parties agree that the terms of this agreement constitute a fair and equal division of the assets and debts and that neither party owes an equalization payment to the other". The Agreement

contains a careful division of the marital assets, including an agreement that John would receive "all of the stock in * * * [Sea Supreme] as his sole and separate property".  It would be illogical to suppose that the Parties intended the spousal support payments to Carol to be a disguised form of property payments.

The Agreement recites that "Each party is aware of the right of each party to receive spousal support from the other party based upon the relative income and needs of the parties and the duration of the marriage".  (There is a presumption under California law that a marriage of 10 years or more is a marriage of "long duration".  Cal. Fam. Law Code sec. 4336 (West 2004).)  The Agreement contains under SPOUSAL SUPPORT a carefully detailed spelling out of the Parties' respective rights and obligations with regard to spousal support.  There is nothing in the Agreement that would lead one to conclude, either by express statement or inferentially, that the payments in question are intended as anything other than support payments.

By the same token there is nothing in the Agreement to suggest that John's payments to Carol are periodic installments on an overall lump-sum obligation.  No lump-sum amount is referred to anywhere in the Agreement, nor is there any basis for inferring that such exists.  We therefore reject petitioner's arguments on this point.

The parties dispute whether the burden of proof in this case has been shifted to respondent pursuant to section 7491. Section 7491(a) imposes the burden of proof on respondent if the taxpayer introduces credible evidence with respect to any factual issue and complies with the requirements of section 7491(a)(2)(A) and (B) to substantiate all items at issue, maintain required records, and cooperate with reasonable requests of respondent. We find it unnecessary to decide whether petitioners have met the prerequisites of section 7491(a), because the record in this case is not evenly weighted and the resolution of the issues in controversy does not depend upon which party bears the burden of proof. We render a decision on the preponderance of the evidence in the record. See, generally, Higbee v. Commissioner, 116 T.C. 438 (2001); Goode v. Commissioner, T.C. Memo. 2006-48.

We hold that the spousal support payments by John to Carol constitute alimony under section 71, since there is no liability on John's part to make any such payment for any period after the death of Carol, the payee spouse, as provided by section 71(b)(1)(D).

To give effect to the foregoing,

Decision will be entered

under Rule 155.