T.C. Memo. 2016-71

UNITED STATES TAX COURT

AMY NDIAYE DELIA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18273-14.                          Filed April 20, 2016.

Amy Ndiaye Delia, pro se.

<u>William J. Gregg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) deter-

mined a deficiency in petitioner's 2011 Federal income tax of $5,503[1] and an

_____

[1]All statutory references are to the Internal Revenue Code (Code) for the
year in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*2] accuracy-related penalty of $1,101 under section 6662(a). The deficiency stems from respondent's disallowance of the deductions petitioner claimed with respect to her sole proprietorship, to the extent those deductions exceeded her income therefrom, on the ground that "such activity [wa]s not engaged in for profit." See sec. 183(a). We conclude that petitioner engaged in this activity during 2011 with the genuine (if optimistic) intent to earn a profit but find that she failed to substantiate certain of the expenses in question. We will sustain the penalty only with respect to the portion of the underpayment attributable to these unsubstantiated expenses.

FINDINGS OF FACT

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioner was born to a large family in Senegal, where she learned and practiced the art of hair braiding. Although she had no formal training in this field, she continued to practice it after arriving in the United States. In 2004 she opened a salon near her home in Laurel, Maryland, called Nanou's African Braiding. This salon was housed in a booth inside a shopping mall that included numerous other hair-braiding and beauty-related businesses.

Petitioner initially signed a five-year lease for the salon space. By its terms, the lease was to renew automatically at the end of five years; petitioner did not

**[*3]** have a clear understanding of this fact when she entered into the lease. When the lease came up for renewal in 2009, in the midst of the financial crisis, petitioner's business was doing poorly and she was not eager to renew the lease. But her landlord insisted that she honor her commitment, and she feared damage to her credit rating if she refused. As a concession to petitioner's faithful performance of her obligations to that point, the landlord agreed to limit the renewal period to three years.

Petitioner undertook reasonable, if limited, marketing efforts in connection with her salon. She initially took out Yellowbook ads but found that these were ineffective in reaching her intended market. She later created brochures and advertising fliers that she circulated by hand at neighborhood grocery stores and shopping centers. She had the name of her salon painted on the side of her van in the hope of attracting clients.

Petitioner maintained a Web site for the salon, and it was equipped with landline telephone service. She kept distinct business records for the salon, including spreadsheets showing income and expenses and hard copies of some expense receipts. She maintained a separate bank account for the salon during 2004-2010 but closed that account in 2010 in an effort to cut costs.

**[*4]**   Petitioner had a full-time job during 2011 as an event planner with Compass Group USA, Inc.  She spent most weekends at the salon in the hope of getting walk-in customers, and she spent weekday evenings there to meet customers who had called for appointments.  The salon had fewer than 15 customers during 2011, some of whom were repeat customers.  Petitioner earned revenues in only five months of that year, producing total gross receipts of $325.  She closed the salon in 2012 when the landlord let her out of her lease.

Petitioner has never reported a profit from her salon business.  The salon generated revenues in excess of $600 in 2010, and petitioner described the early years as "much better than that."  But she reported a loss on her Schedule C, Profit or Loss From Business, for every year from 2005 through 2012.

Petitioner credibly testified that her business failed for three main reasons. The first was the financial crisis of 2008-2010, which had a very severe impact on the African-American community in suburban Maryland.  The second was a change in taste among African-American women away from hair braiding.  The third was an over-concentration in her community of braiding salons and beauty salons providing braiding services.  The salons best situated to survive in this environment were those run by licensed cosmetologists who could offer a full

[*5] array of beauty services. Petitioner did not have a license and could not compete effectively with those businesses.

For 2011 petitioner timely filed Form 1040, U.S. Individual Income Tax Return, reporting wages of $82,503 from Compass Group. On Schedule C she reported gross receipts of $325 and expenses of $16,131 attributable to the salon. Her reported expenses consisted of $13,000 for rent on the salon lease; $590 for hair products used in the salon; $909 for salon landline service; $600 for Web site maintenance; $552 for cell phone expenses; and $480 for "supplies." Following examination of this return, the IRS issued her a timely notice of deficiency which determined that she had failed to "establish that the business expenses shown on * * * [her] tax return were paid or incurred during the taxable year and that the expenses were ordinary and necessary to * * * [her] business." The notice denied petitioner's Schedule C deductions to the extent they exceeded the salon's income and determined an accuracy-related penalty. While residing in Maryland, she timely petitioned this Court for review.[2]

---

[2]Petitioner was before this Court previously in Delia v. Commissioner, T.C. Dkt. No. 8853-14S (June 2, 2015) (stipulated decision), which involved her 2010 tax year. On June 2, 2015, the Court in that case entered a stipulated decision determining a deficiency of $828 and no penalty under section 6662(a).

**[\*6]**                                   OPINION

A.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

B.    Schedule C Deductions

1.    "Trade or Business"

The first question is whether petitioner's hair-braiding activity during 2011 was a trade or business engaged in for profit.  If an activity "is not engaged in for profit," section 183 generally disallows deductions except to the extent of "the gross income derived from such activity for the taxable year."  Sec. 183(a), (b)(2).

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  To be entitled to business-expense deductions without limitation by section

[*7] 183, the taxpayer must show that she engaged in the activity with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983). Deductions are not allowable for activities that a taxpayer carries on primarily as a sport, as a hobby, or for recreation. Sec. 1.183-2(a), Income Tax Regs.

In assessing the taxpayer's profit motive, we accord greater weight to objective facts than to subjective statements of intent. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(a), Income Tax Regs. The taxpayer must establish that she "engaged in the activity with 'the predominant, primary or principal objective' of realizing an economic profit independent of tax savings." Giles v. Commissioner, T.C. Memo. 2006-15, 91 T.C.M. (CCH) 684, 688 (quoting Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212); see Hulter, 91 T.C. at 392. Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer, 78 T.C. at 645; sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be resolved from all the relevant facts and circumstances. Hulter, 91 T.C. at 393; Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

**[\*8]**   The regulations set forth a nonexclusive list of nine factors relevant in ascertaining whether a taxpayer conducts an activity with the intent to earn a profit. The factors listed are:  (1) the manner in which the taxpayer conducts the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort spent by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  Sec. 1.183-2(b), Income Tax Regs.

No factor or group of factors is controlling, nor is it necessary that a majority of factors point to one outcome.  See Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309, 94 T.C.M. (CCH) 383; Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b), Income Tax Regs. Certain factors may be accorded more weight in a particular case because they have greater salience or persuasive value as applied to its facts.  See Vitale v. Commissioner, T.C. Memo. 1999-131, 77 T.C.M. (CCH) 1869, 1847, aff'd without published opinion, 217 F.3d 843 (4th Cir. 2000); Green v. Commissioner,

[*9] T.C. Memo. 1989-436, 57 T.C.M. (CCH) 1333, 1343 (noting that all nine factors do not necessarily apply in every case).

We regard several of the regulatory factors as neutral in this case. The only factor that weighs heavily against petitioner is the salon's persistent history of losses. Despite that fact, we are convinced that she conducted her hair-braiding business with an actual and honest (if unduly optimistic) objective of making a profit.

It is clear to us that petitioner had a genuine profit motive when she opened her salon in 2004. She credibly testified that this business failed for reasons beyond her control, including the 2008-2010 financial crisis, an over-concentration of similar businesses in her community, and a marked change in taste among her prospective customers. It might have been prudent for her to have exited this business before she did, but the long-term rental contract posed a serious obstacle. She concluded, not unreasonably, that trying to salvage as much profit as she could was preferable to risking damage to her credit rating by defaulting on her lease commitment. She closed the business promptly after extricating herself from the lease.

Petitioner had very little money, and the salon did not generate much. She kept business records and undertook marketing efforts that seem reasonable rela-

**[\*10]** tive to the scale of her activity. Operating the salon during 2011 was not a source of great personal pleasure or recreation, and it was surely not a "sport" or a "hobby." Sec. 1.183-2(a), Income Tax Regs. Although petitioner had a nostalgic fondness for hair braiding, sitting in an empty booth in a shopping mall is not as much fun as (say) riding horses. See Keating, 94 T.C.M. (CCH) at 384 (finding taxpayer lacked profit motive in part because she "received much enjoyment and satisfaction from her horse activity"); see also Judah v. Commissioner, T.C. Memo. 2015-243, at \*51 (same outcome where taxpayers got "substantial enjoyment seeing their daughter ride horses"). And petitioner clearly did not engage in this activity with a view to generating tax benefits by sheltering other income. Her other income was modest, and the losses she suffered were genuine out-of-pocket losses that dwarfed any resulting tax benefits.

We conclude that petitioner conducted her salon business during 2011 with an "actual and honest objective of making a profit." See Levy v. Commissioner, 91 T.C. 838, 871 (1988) (quoting Hutler, 91 T.C. at 392). She was thus entitled to claim deductions for the expenses of that business to the extent she substantiated them.

[*11] 2.     Substantiation

The burden of substantiating claimed deductions rests on the taxpayer. Sec. 6001; Rule 142(a); Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). Petitioner admitted at trial that she lacked substantiation for certain of her reported expenses. She claimed a deduction of $480 for "supplies," but her business records show that amount, accrued at a flat rate of $40 per month, as being attributable to "meals." She offered no documentation for any meal expense and did not show that meals were an ordinary and necessary expense of her hair-braiding business. She claimed a deduction of $590 for hair products used in the salon, but she supplied substantiation for only $181 of such expenses. With respect to her alleged cell phone expense, she did not substantiate the amount claimed ($552) and did not prove the extent to which she used that phone for business purposes connected to the salon. Given the modest scale of her salon activity during 2011, any business use of her cell phone was likely to have been quite small.

In sum, we find that petitioner has failed to substantiate $480 of supplies expenses, $409 of hair product expenses, and $552 of business-related cell phone expenses. Her allowable Schedule C deductions for 2011 must thus be reduced by $1,441, that is, from $16,131 to $14,690.

**[\*12]** C.     Penalty

Section 6662 imposes a 20% penalty upon the portion of any underpayment attributable to (among other things) negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the tax laws, and "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence also includes any failure to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015).

With respect to an individual taxpayer's liability for a penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that imposition of a penalty is appropriate.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect. Ibid.; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  We find that respondent has discharged his burden of production by showing that petitioner failed to keep adequate records.  See sec. 1.6662-3(b)(1), Income Tax Regs.

**[\*13]** Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and that she acted in good faith with respect to, the underpayment. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid.

Petitioner understood the need to keep records documenting her expenses, but her record-keeping was demonstrably incomplete. She lacked documentation for several categories of expenses and treated certain items inconsistently (reporting an alleged expense for meals as "supplies" on her Schedule C). Given the nature of her business, her claimed expense for meals was facially implausible. We find that petitioner was negligent in preparing her 2011 return and will therefore sustain an accuracy-related penalty on the portion of the underpayment attributable to the unsubstantiated expenses.

**[*14]** To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.