ROSALIE J. WEBB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES I. WEBB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webb v. Commissioner
Docket Nos. 31610-88, 1104-89
United States Tax Court
T.C. Memo 1990-540; 1990 Tax Ct. Memo LEXIS 594; 60 T.C.M. (CCH) 1024; T.C.M. (RIA) 90540; October 18, 1990, Filed *594 Decisions will be entered for the petitioner in docket No. 31610-88 and for the respondent in docket No. 1104-89. Edwin J. Kelley, Jr., and Daniel J. Gallagher, for the petitioner in docket No. 31610-88. T. Kevin Fahey, for the petitioner in docket No. 1104-89. John D. Steele, Jr., for the respondent. TANNENWALD, Judge. TANNENWALD
MEMORANDUM OPINION Respondent determined the following deficiencies in and additions to tax in petitioners' Federal income tax for the taxable year 1986: Additions to Tax
Petitioner
Deficiency
Sec. 6661 [1]
Rosalie J. Webb
$  95,200.00
$ 23,800.00
James I. Webb
107,500.00 --
*596 After a concession by respondent, [2] the issue for decision is whether two payments made pursuant to a separation agreement by petitioner James I. Webb to Rosalie J. Webb are alimony payments under section 71. This case was submitted under Rule 122, and the stipulation of facts and attached exhibits are incorporated herein by reference. At the time of the filing of their petitions, each petitioner resided in Sherburne, New York. On October 15, 1986, petitioners entered into a separation agreement, which was entitled "Opting Out Agreement Pursuant to DLR sec. 236(B)" (agreement). The agreement provided, in pertinent part: H. The parties intend that their real and personal property division, as provided in this agreement, shall be final and irrevocable. Unless the parties execute a formal amendment to this agreement, in writing, it is their intention that the Wife's separate property shall forever remain hers and the *597 Husband's separate property shall forever remain his notwithstanding (a) the reconciliation of the parties; (b) the rescission or termination of this agreement; or (c) a remarriage of the parties, in the event they are divorced. * * * 3. Property Distribution. (a) Household Furniture and Furnishings. * * * (b) Automobiles. The Wife acknowledges that she has no interest, claim or rights of ownership in and to any automobiles previously furnished to her through Webb & Sons, Inc. and/or Lok-N-Logs, Inc. The Husband shall pay, simultaneously with the execution of this Agreement, to the Wife, the sum of FIFTEEN THOUSAND DOLLARS ($ 15,000.00) for the purpose of enabling the Wife to secure a replacement automobile which shall be her sole and separate property. (c) Marital Residence and Farm. * * * (d) Bank Accounts and Securities. * * * (e) Mortgages. * * * (f) Deferred Compensation Programs. * * * (g) Lump Sum. The Husband shall pay to the Wife, on signing this Agreement, the sum of TWO HUNDRED THOUSAND DOLLARS ($ 200,000.00), which said sum shall constitute her sole and separate property free from any demand, claim *598 or interest of the Husband therein. (h) Additional living expenses. [Provision for two payments of $ 5,000 each "as reimbursement for previously incurred living expenses" and do "not constitute maintenance and support for the wife."] (i) Life Insurance. * * * (j) Business Enterprises. * * * (k) Additional Real Estate and Mortgages. * * * 4. MAINTENANCE. The Husband makes the foregoing [3] provisions for the maintenance of the Wife in lieu of all other prior written or oral agreements and orders: A. The Husband shall pay to the Wife the sum of FORTY THOUSAND DOLLARS ($ 40,000.00) per year commencing on the 1st day of January, 1987 and a similar sum of $ 40,000.00 shall be paid by the Husband to the Wife on the 1st day of January, 1988, on the 1st day of January, 1989, on the 1st day of January, 1990, and on the 1st day of January 1991. The Husband shall have no further obligation to pay maintenance to the Wife following January 1, 1991 except for arrears, if any. *599 B. Except as set forth above, taking into consideration all of the existing relevant facts and circumstances including but not limited to the respective financial circumstances of the parties, the Husband and Wife do not seek or require from the other any maintenance or support. Furthermore, except as set forth above, each party waives and releases his or her right to any past, present or future maintenance or support and agree to indemnify the other with regard to any past, present or future claims for necessaries furnished to either party. C. The maintenance obligations of the Husband as set forth in paragraph "4(a)" shall terminate upon the happening of any one of the following events: (1) Death of the Wife; (2) Death of the Husband; * * * 14. BINDING AGREEMENT. This Agreement shall be binding not only upon the parties hereto, but also their respective heirs, executors, administrators and assigns. * * * Also, on October 15, 1986, at the time the agreement was executed and pursuant to its terms, petitioner James I. Webb issued two personal checks to petitioner Rosalie J. Webb, one in the amount of $ 15,000 and the other in *600 the amount of $ 200,000. On their 1986 Federal income tax returns, petitioner James I. Webb deducted the $ 215,000 payments as alimony, and petitioner Rosalie J. Webb excluded the amounts from income as a transfer of property. By statutory notices of deficiency, respondent took inconsistent positions by disallowing the alimony deduction taken by petitioner James I. Webb and increasing petitioner Rosalie J. Webb's income to include the $ 215,000 payments. If the payments represent alimony within the meaning of section 71, [4] then petitioner James I. Webb is entitled to deduct the payments under section 215(a), and petitioner Rosalie J. Webb must include these amounts in income under section 61(a)(8). On the other hand, if the payments represent a property settlement, petitioner James I. Webb is not entitled to a deduction, and petitioner Rosalie J. Webb does not have income represented by the payments. See sec. 1041(a). *601 None of the parties argue that the requirements of subparagraphs (A), (B), and (C) of section 71(b)(1) have not been satisfied. Their disagreement focuses on the provisions of subparagraph (D). [5] Petitioner James I. Webb argues that, because the cash payments of $ 215,000 called for by paragraph 3 of the agreement were made simultaneously with the signing of the agreement, no liability arose which would not have terminated at Rosalie J. Webb's death; therefore, he contends that the requirement of subparagraph (D) has been satisfied. In contrast, petitioner Rosalie J. Webb contends that the agreement imposed a liability to make the two payments totalling $ 215,000 which would survive her death. We agree with petitioner Rosalie J. Webb. *602 In reaching our conclusion, we have applied the language of the agreement itself, avoiding any analysis of the nuances of local law or drawing any inferences as to the intent of the parties. In so doing, we have taken into account the foundation of the 1984 revisions to section 71, namely, the legislative objective to minimize the differences in Federal tax consequences created by differences in State laws and to establish an objective and uniform Federal standard as to what constitutes alimony. Sec. 422(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795. [6] See also H. Rept. 98-432, Part 2, 1495, 1496 (1984), wherein the House Committee articulated the purpose of the 1984 amendments as follows: The committee believes that a uniform Federal standard should be set forth to determine what constitutes alimony for Federal tax purposes. This will make it easier for the Internal Revenue Service, the parties to a divorce, and the courts to apply the rules to the facts in any particular case and should lead to less litigation. The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony *603 as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements. * * * In order to prevent the deduction of amounts which are in effect transfers of property unrelated to the support needs of the recipient, the bill provides that a payment qualifies as alimony only if the payor (or any person making a payment on behalf of the payor) has no liability to make any such payment for any period following the death of the payee spouse. * * * We think it significant that the statute speaks in terms of "liability." The agreement in respect of both the $ 15,000 payment and the $ 200,000 payment provides that "The Husband shall pay." See supra p. 3. Unquestionably, this created *604 a liability which would have been enforceable by Rosalie J. Webb's estate had she died after the execution of the agreement but before the payments were actually made. Paragraph 4 of the agreement stands in sharp contrast; it specifically provides for termination of the $ 40,000 annual payments in the event of the "Death of the Wife." See supra p. 5. [7]
The fact that the payments were in fact made simultaneously with the execution of the agreement is irrelevant. To conclude otherwise would cause any cash payment made simultaneously with the issuance of a decree or the execution of an agreement necessarily to be treated as alimony even though the provisions of the decree or agreement clearly reveal that the payments were lump sum payments for purposes other than support or maintenance. We refuse to embrace such an incongruous, absurd position. We hold *605 that the two cash payments totaling $ 215,000 do not constitute alimony under section 71. Consequently, they are not deductible by James I. Webb and do not constitute taxable income to Rosalie J. Webb. Decisions will be entered for the petitioner in docket No. 31610-88 and for the respondent in docket No. 1104-89.
Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for the year in issue, and all references to a Rule are to the Tax Court Rules of Practice and Procedure.↩
2. As to petitioner Rosalie J. Webb, respondent has conceded the addition to tax.↩
3. It is clear that the inclusion of the word "foregoing" represents an inadvertent error.↩
4. In relevant part, section 71 provides: (b) Alimony or separate maintenance payments defined. -- For purposes of this section -- (1) In general. -- The term "alimony or separate maintenance payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.↩
5. Respondent, asserting that he is only a stakeholder, has taken no position on the issue involved herein. He recognizes, of course, that he has taken inconsistent positions to protect the revenue and that he can prevail only as against either James I. Webb or Rosalie J. Webb and not both.↩
6. This amendment applies to divorce or separation agreements executed after December 31, 1984, or executed before January 1, 1985, and modified on or after such date if the modification expressly provides that the amendments to section 71↩ apply to such modification.
7. We also note that paragraph 14 of the agreement provides that it should be binding upon the parties' "heirs, executors, administrators and assigns."↩