**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-94

UNITED STATES TAX COURT

KENNETH RUSSELL LAREMORE, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 15737-12S.                    Filed September 18, 2014.

Kenneth Russell Laremore, for himself.

Edward J. Laubach, Jr., for respondent.

SUMMARY OPINION

GUSTAFSON, Judge:  This case was heard pursuant to the provisions of

section 7463[1] in effect when the petition was filed.  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 as in effect for the year in issue (codified in 26 U.S.C., and
referred to herein as "the Code"), and all Rule references are to the Tax Court
Rules of Practice and Procedure.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The Internal Revenue Service ("IRS") determined a deficiency of $12,448 in the 2009 Federal income tax of petitioner Kenneth Laremore. The issue for decision is whether Mr. Laremore may deduct as alimony $48,921 that he paid to his former spouse during 2009 in satisfaction of a judgment. We hold that he may not, because his obligation under the divorce instrument would not have terminated upon his ex-wife's death, for purposes of section 71(b)(1)(D).

## FINDINGS OF FACT

The parties submitted this issue fully stipulated pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented without a trial. The stipulation of facts filed December 3, 2013, and the attached exhibits are incorporated herein by this reference. Mr. Laremore resided in Pennsylvania at the time he filed his petition.

Property settlement agreement

Mr. Laremore married Linda Gonsowski in 1975, and they were granted a judgment of divorce in the State of New York in 2006. As part of the judgment of divorce, Mr. and Mrs. Laremore agreed to a stipulation of settlement which was entered of record during a court hearing.

<u>Maintenance payments</u>

The stipulation of settlement provided for Mr. Laremore to make monthly maintenance payments of $1,250 to his ex-wife commencing June 1, 2006, and continuing until Mrs. Laremore's death or remarriage. Specifically, the parties agreed that the payments of $1,250 "will be taxable, of course, to the wife; tax deductible to the husband pursuant to IRS rules." (There is no dispute in this case that Mr. Laremore may deduct those amounts for income tax purposes.)

<u>Other property</u>

Pursuant to the stipulation of settlement, Mr. and Mrs. Laremore made several agreements regarding the division of their marital assets. They agreed to sell their residence and split the net proceeds equally. They also agreed to divide their joint bank accounts equally, with Mr. Laremore agreeing to give Mrs. Laremore 50% of the funds in a bank account he held individually.

Also in the stipulation of settlement, and pertinent to this case, the couple agreed to "<u>divide</u>[] <u>equally</u>" their retirement accounts, "so that the net result is that they [would] end up with <u>equal dollars</u>." (Emphasis added.) The stipulation of settlement provided:

> The value of Mr. Laremore's IRA's, over Mrs. Laremore's, is $77,730.48. The agreement is that she will get half of that sum for

$38,865.24 via a QDRO[2] being placed on Mr. Laremore's traditional IRA so that that amount will be transferred to her and the end result is that the parties will have <u>equally shared these retirement accounts</u>. [Emphasis added.]

During a brief discussion held off the record, the parties realized that their respective numbers for the various retirement accounts did not precisely match. Addressing the matter on the record, divorce counsel for Mr. Laremore stated:

> We're recognizing that the numbers on the IRA's or retirement accounts may be slightly off, but the concept here is that whatever was in those accounts at commencement, plus the growth on them, <u>equally belongs to the parties</u>. * * *

> And so to the extent that we need to look at statements and do a little tweaking on the number, we will, but <u>the concept of what we're doing is there</u>. [Emphasis added.]

<u>Divorce decree</u>

The stipulation of settlement was incorporated by reference into the divorce decree, in which it was--

---

[2]A "QDRO" is a "qualified domestic relations order" as defined in section 414(p), which is issued in the context of a divorce or separation. A QDRO permits a portion of a tax-advantaged retirement plan, such as an individual retirement account ("IRA"), <u>see</u> sec. 408, to be transferred from one divorcing spouse to the other without the transferring spouse's incurring a tax liability on the amount transferred. Thereafter, the receiving spouse owns the portion transferred and will owe any income tax liability arising from withdrawals of funds out of the account.

ORDERED AND ADJUDGED, that the stipulation of settlement dated May 25, 2006, entered into between the parties a copy of the transcript of which is attached to and incorporated in this judgment by reference, shall survive and shall not be merged in this judgment, and the parties hereby are directed to comply with every legally enforceable term and provision of such stipulation as if such term or provision were set forth in its entirety herein * * * .

After the divorce was finalized, Mr. Laremore moved to Pennsylvania.

2009 payments under the stipulation of settlement

If events had proceeded as agreed, roughly $38,000 would have been rolled over from Mr. Laremore's IRA managed by Vanguard Funds ("Vanguard")--without tax liability accruing to him--into an IRA owned by Mrs. Laremore. Thereafter, she would have borne the income tax liability on withdrawals of that money.

But events did not proceed entirely as agreed. Mr. Laremore did pay Mrs. Laremore her maintenance payments (which in 2009 totaled $15,000). However, although their divorce was final in 2006, Mrs. Laremore did not receive the agreed-upon sum of $38,865 for the equal division of their retirement accounts until 2009.

From 2007 to 2009 Mrs. Laremore's counsel attempted on three occasions--but at an apparently slow pace--to file the QDROs, yet all three attempts had various defects. Rather than continuing her attempts to file a QDRO,

Mrs. Laremore sued Mr. Laremore in Suffolk County, New York; and on May 5, 2009, a judgment was entered against Mr. Laremore. Mrs. Laremore directed that the judgment be transferred to Mr. Laremore's home State of Pennsylvania in order to enforce it against him. On November 30, 2009, Vanguard paid her $48,921 (including $10,056 in penalty interest) from Mr. Laremore's non-IRA accounts in full satisfaction of the judgment.

Notice of deficiency

On his 2009 Form 1040, "U.S. Individual Income Tax Return", Mr. Laremore claimed an alimony deduction of $63,921 for his payments to his ex-wife in 2009. Respondent concedes that $15,000 of this amount consists of the separate maintenance payments provided for in the stipulation of settlement and is deductible as alimony. By a statutory notice of deficiency dated May 21, 2012, the IRS disallowed the remaining $48,921 of Mr. Laremore's claimed alimony deduction (which consisted of his payment of the judgment) and determined a $12,448 deficiency in Mr. Laremore's 2009 Federal income tax.

OPINION

## I.      Burden of Proof

As a general rule, the IRS's determination is presumed correct, and taxpayers generally bear the burden to prove their entitlement to any deductions they claim. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The submission of a case under Rule 122 does not alter that burden. See Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991). Taxpayers must satisfy the specific requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Mr. Laremore seeks to deduct as alimony the $48,921 he paid to Mrs. Laremore; in order to do so, he must prove it was in fact a payment of alimony.

## II.      Definition of Alimony

Section 215(a) allows a deduction to the paying spouse for the alimony or separate maintenance payments made during the paying spouse's tax year that are includible in the recipient spouse's gross income under section 71(a). The characterization of payments in a decree as alimony or property settlement is not controlling. See Baker v. Commissioner, T.C. Memo. 2000-164. Whether a payment constitutes alimony within the meaning of sections 71(a) and 215(a) is determined by reference to section 71(b)(1), which provides:

SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1)     In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A)     such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B)     the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C)     in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D)     there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

In 1984 Congress enacted section 71 in its current form specifically to "eliminate the subjective inquiries into intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test." Hoover v. Commissioner, 102 F.3d 842, 844-845 (6th Cir. 1996), aff'g T.C. Memo. 1995-183. If all four of these conditions are met, then a payment is deductible alimony; if any one or more of

them is not met, then the payment is not deductible alimony. <u>Jaffe v. Commissioner</u>, T.C. Memo. 1999-196, slip op. at 9.

III.    <u>Liability to make payment after death, under section 71(b)(1)(D)</u>

The parties do not dispute whether Mr. Laremore's 2009 payment satisfies section 71(b)(1)(C), but the Commissioner contends that he fails to meet the other three requirements of the statute in subparagraphs (A), (B), and (D). We need not address all three of these, because we hold that Mr. Laremore did remain liable to make the payment in the event of his ex-wife's death.[3] The 2009 payment therefore did not meet the requirement of section 71(b)(1)(D) and did not qualify as deductible alimony.

---

[3]The parties do not raise section 408(d)(6), which provides that a transfer of an individual's IRA to a former spouse, pursuant to a divorce or separation agreement, is not a taxable transfer. For section 408(d)(6) to apply, "(1) [t]here must be a transfer of the IRA participant's 'interest' in the IRA to his spouse or former spouse, and (2) such transfer must have been made under a section 71(b)(2) divorce or separation instrument." <u>Bunney v. Commissioner</u>, 114 T.C. 259, 264-265 (2000). Because the 2009 payment by Mr. Laremore was in cash from a non-IRA account (instead of being in the form of a transfer of half his interest in the IRA via a QDRO), section 408(d)(6) does not apply. However, Mr. and Mrs. Laremore's clear shared intent, at the time of the stipulation of settlement, was that the transfer be from Mr. Laremore's IRA. This fact influences our construction of the stipulation of settlement and supports the conclusion that the agreement provides for a transfer to Mrs. Laremore that would be non-taxable to her and that would take place even if she died after the divorce and before the transfer.

In deciding whether payments qualify as alimony under section 71(b)(1)(D), we examine the terms of the divorce or separation instrument to ascertain whether it contains a condition that terminates the paying spouse's liability upon the death of the recipient spouse, and, if it does not, whether State law applies such a condition in cases where the instrument is silent. See Hoover v. Commissioner, 102 F.3d at 847. Accordingly, section 71(b)(1)(D) is satisfied "if the liability ceases upon the death of the payee spouse by operation of law." Proctor v. Commissioner, 129 T.C. 92, 96 (2007) (citing Notice 87-9, 1987-1 C.B. 421).

Respondent argues that Mr. Laremore's obligation to pay would not terminate at death, because "[t]here is no statute or caselaw in either New York or Pennsylvania which would render a judgment for monetary damages void if the judgment creditor dies. In the event of the death of the judgment holder, the judgment inures to the benefit of the judgment holder's heirs." (Emphasis added.) Mr. Laremore counters with the argument (for which he cites no authority) that his liability to pay Mrs. Laremore, or her estate (in the event of her death), would depend on whether she had previously given the executor of her estate permission to transfer the obligation at her death. But both these contentions, addressing whether the judgment against Mr. Laremore would have survived Mrs. Laremore's

death, stray from the real issue: whether Mr. Laremore's obligation under the stipulation of settlement would have survived her death.

To determine whether an obligation terminates at the payor's death, the Court turns first to the plain language of the stipulation of settlement. In <u>Webb v. Commissioner</u>, T.C. Memo. 1990-540, 1990 Tax Ct. Memo LEXIS 594, the Court was asked to decide whether an obligation containing the phrase "the Husband shall pay" created an obligation which survived the death of the recipient spouse. Highlighting the fact that "the statute speaks in terms of 'liability'", we held that the above-quoted phrase "[u]nquestionably * * * created a liability which would have been enforceable by * * * [the former spouse's] estate had she died after the execution of the agreement but before the payments were actually made." <u>Id.</u>, 1990 Tax Court Memo LEXIS 594, at *10-*11.

Similarly, the stipulation of settlement between Mr. and Mrs. Laremore provided:

> The value of Mr. Laremore's IRA's, over Mrs. Laremore's, is $77,730.48. The agreement is that she <u>will get</u> half of that sum for $38, 865.24. <u>She will get</u> that $38,865.24 via a QDRO being placed on Mr. Laremore's traditional IRA so that that amount <u>will be transferred to her</u> and the end result is that the parties <u>will have equally shared</u> these retirement accounts. [Emphasis added.]

The language creating the obligation--"she <u>will</u> get" and "that amount <u>will be</u> <u>transferred to her</u>"--imposes a liability on Mr. Laremore that is not made conditional on death or remarriage and that is not qualified in any way by another provision.  As in <u>Webb</u>, the above-quoted language--without qualification or language indicating termination at death--stands in sharp contrast to a later section of the stipulation of settlement providing for maintenance payments, where the agreement expressly states that the maintenance payments would terminate in the event of Mrs. Laremore's death or remarriage.[4]  <u>See</u> <u>Webb v. Commissioner</u>, 1990 Tax Court Memo LEXIS 594, at \*11 ("Paragraph 4 of the agreement stands in sharp contrast; it specifically provides for termination of the $40,000 annual payments in the event of the 'Death of the Wife'").  When the stipulation of settlement was recorded, Mr. Laremore agreed to be bound by the agreement; he acknowledged that he understood the binding implication of the stipulation, that it settled the matter and that it was in lieu of a decision issued by the court.  Therefore, pursuant to the stipulation of settlement and the divorce decree, Mr. Laremore's obligation to make the payment at issue survives the death of

---

[4]Mr. Laremore's divorce counsel stated on the record:  "I just wanted to clarify, that if Mrs. Laremore dies, God forbid, or remarries, maintenance ends."

Mrs. Laremore, and that payment was not alimony under section 71(b)(1) or deductible under section 215(a).

IV.     Mr. Laremore's additional argument

Pursuant to the terms of the stipulation of settlement, Mr. Laremore's obligation should have been satisfied, under a QDRO, by a tax-free transfer from his IRA, leaving still available to him his non-IRA funds, which he was free to withdraw without the tax liability that would accompany IRA withdrawals.  And under those terms, Mrs. Laremore would have owed tax at such time as she withdrew the IRA-derived funds that had been transferred to her.  Instead, because Mr. Laremore had to pay the judgment out of non-IRA funds, Mrs. Laremore received non-IRA money on which she did not have to pay tax; and Mr. Laremore's non-IRA funds have been depleted.  (Upon withdrawing equivalent funds from his IRA, he will have to pay tax that should have been borne by Mrs. Laremore.)

Mr. Laremore thus understandably complains that the tax effects of the divorce settlement have been distorted to his disadvantage; and he seems to contend, in effect, that this distortion should be cured by allowing him to deduct

the payment as alimony.[5]  However sympathetic Mr. Laremore's circumstance may be, and however appealing his proposed cure might seem, it is not warranted under section 71(b)(1).  If the amount he was obligated to pay was not alimony (and it was not), then it does not become deductible simply because the tax incidents of the transfer were worse for him than they should have been under the agreement that he and his ex-wife had reached.  Any inequities in the divorce settlement would have to be addressed by the divorce court, and the Tax Court cannot address them by making equitable adjustments to Mr. Laremore's tax liability not called for in the Internal Revenue Code.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[5]Mr. Laremore also seems to suggest that Mrs. Laremore should be held liable for income tax on the $48,921 that was paid to her pursuant to the judgment, and in this connection he cites section 1041, which provides rules for gain, loss, and basis when property is transferred incident to a divorce.  However, Mrs. Laremore's liability is not before us, and we therefore do not attempt to analyze her side of the transfers at issue.