# United States Tax Court

T.C. Memo. 2025-120

JOHN DITULLIO,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

––––––––––

Docket No. 4049-23.                                      Filed November 18, 2025.

––––––––––

*Christine S. Speidel* and *Amy M. Feinberg*, for petitioner.

*Michael D. Kohanim*, *James P.A. Caligure*, and *Brian E. Peterson*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

MARSHALL, *Judge*: Respondent issued petitioner a Notice of Deficiency (Notice) in which he determined a deficiency of $12,000 and a section 6662(a)[1] accuracy-related penalty of $2,400 with respect to petitioner's 2020 tax year. Respondent has since conceded the section 6662(a) accuracy-related penalty. Therefore, the sole issue for decision is whether petitioner's $50,000 payment to his ex-wife was alimony under section 71(b)(1). As discussed below, we conclude that it was not alimony as defined in section 71(b)(1) and, therefore, is not deductible under section 215(a).

––––––––––

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The First Stipulation of Facts, the Second Stipulation of Facts, and the accompanying Exhibits are incorporated herein by this reference. Petitioner resided in New Jersey when he filed his Petition.

Petitioner and Lisa M. Lopez were married from 2005 to 2017.[2] During their marriage and until 2013, petitioner was an electrician employed by the State of New Jersey. In 2013, he sustained a severe injury at work and was permanently disabled. In 2014, petitioner applied for a disability pension claim to the board of trustees (Board) of the New Jersey Public Employees' Retirement System (PERS). In a letter dated March 18, 2020 (Decision Letter), the Board adopted the conclusion of an administrative law judge that petitioner was totally and permanently disabled from performing his regular and assigned duties and approved petitioner for ordinary disability retirement benefits effective as of July 1, 2014. When petitioner applied for benefits in 2014, he selected the "Maximum Option" under the PERS regulations which provided him with the highest possible monthly income but with no survivor benefits.

On March 22, 2017, petitioner and Ms. Lopez signed a Final Judgment of Divorce (FJOD) in the State of New Jersey. Ms. Lopez was represented by Robert S. Greenberg[3] in the divorce. Petitioner was unrepresented because he could not afford an attorney. Petitioner was comfortable with Mr. Greenberg's drafting the divorce documents for them because he and Ms. Lopez tried to make the divorce as fair as possible. Paragraph 6 of the FJOD provides:

> Husband has pension benefits earned while an employee with the State of New Jersey. A Qualified Domestic Relations Order (QDRO) shall be prepared and the cost for preparation shall be shared by both parties. Husband has an application currently pending for a disability pension retroactive to the date of his disability. In the event that Husband receives retroactive benefits, Wife shall be entitled to share in those retroactive benefits; however, the amount of her benefits shall be limited to the amount that

---

[2] During their marriage Ms. Lopez was known as Lisa M. DiTullio.

[3] Mr. Greenberg was a New Jersey family law attorney with over 30 years of experience.

**[*3]**  she would otherwise be entitled to based upon a calculation of Husband's ordinary retirement benefits.

Petitioner understood that paragraph 6 of the FJOD entitled Ms. Lopez to a portion of his single lump-sum retroactive pension payment. As indicated in paragraph 6 of the FJOD, Ms. Lopez was supposed to receive her share of the pension payment through a QDRO. Petitioner paid his share of the fee to draft the QDRO to Mr. Greenberg; however, Ms. Lopez did not, and no QDRO was ever prepared. Petitioner's understanding was that if a QDRO had been executed, it would have been served on the New Jersey Department of Pensions; thereafter, when petitioner received a pension payment, the Department of Pensions would have directly paid Ms. Lopez the amount agreed to in the QDRO.

As a result of the Decision Letter, petitioner received a single lump-sum retroactive pension distribution of $156,564 covering the retroactive period from July 2014 until his disability pension claim was approved in 2020. Additionally, in July 2020, petitioner began receiving a monthly disability pension. After petitioner received the Decision Letter, he informed Ms. Lopez of the Board's decision and told her that he would pay her as they had agreed in the FJOD. Through these discussions, they agreed that petitioner would pay Ms. Lopez a single lump-sum payment of $50,000 with no further obligations. Petitioner hired an attorney to draft a Consent Order to memorialize their agreement. The Consent Order provided that paragraph 6 of the FJOD was amended to provide:

> John DiTullio shall give Lisa Lopez $50,000 of his retroactive disability benefits as full satisfaction of any entitlement [Ms. Lopez] might be owed pursuant to paragraph 6 of the Final Judgment of Divorce. No Qualified Domestic Relations Order shall be necessary as husband has received the check from PERS and will provide wife with payment upon receipt of signed and notarized consent order. John DiTullio shall have no other obligation to share any pension benefit with Lisa Lopez.

Petitioner and Ms. Lopez executed the Consent Order on June 9, 2020, at his attorney's office. Concurrently with signing the Consent Order, petitioner gave Ms. Lopez a check for $50,000. Petitioner wrote "Equitable Pension Distribution – Lump Sum" in the memo line of the check. There were no periodic payments or monthly payments to

[*4] Ms. Lopez other than the $50,000 payment described in the Consent Order. Neither the FJOD nor the Consent Order referenced maintenance or alimony or that petitioner's obligation to pay her a share of the retroactive pension payment ceased at Ms. Lopez's death.

Petitioner hired a tax preparer for his Form 1040, U.S. Individual Income Tax Return, for 2020. The tax preparer told petitioner that he could deduct the $50,000 payment as alimony or a separate maintenance payment under section 215(a). Petitioner timely filed the Form 1040 for the 2020 tax year. On November 30, 2022, respondent issued petitioner the Notice and disallowed the alimony deduction.

## OPINION

I.      *Burden of Proof*

Generally, the Commissioner's determination of a taxpayer's liability in a Notice of Deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).[4] Petitioner seeks to deduct the $50,000 payment to Ms. Lopez as alimony. In order to do so he must prove that it was alimony within the meaning of sections 71(a) and 215(a).

II.     *Definition of Alimony*

Section 215(a) allows a deduction to the paying spouse for the alimony or separate maintenance payments made during the paying spouse's tax year that are includible in the recipient spouse's gross income under section 71(a).[5] *See* § 215(b); *see also* 62(a)(10). The

---

[4] Section 7491(a)(1) provides that the burden of proof may shift to the Commissioner when the taxpayer has introduced credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax. *See also* § 7491(a)(2). Because petitioner did not argue or prove that the requirements of section 7491(a) have been met, the burden of proof does not shift to respondent.

[5] Congress repealed sections 62(a)(10), 71, and 215 for all divorce or separation agreements executed after December 31, 2018, and for certain divorce or separation agreements modified after that date. Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, § 11051, 131 Stat. 2054, 2089–90. More specifically, TCJA § 11051(c), 131 Stat. at 2090, provided the following effective date with respect to this repeal:

**[\*5]** characterization of payments in a divorce or separation instrument as alimony or property settlement is not controlling. *See Baker v. Commissioner*, T.C. Memo. 2000-164, 2000 WL 656708, at \*4. Whether a payment constitutes alimony within the meaning of sections 71(a) and 215(a) is determined by reference to section 71(b)(1), which provides:

> Sec. 71(b). Alimony or separate maintenance payments defined.—For purposes of this section—
>> (1) In general.—The term "alimony or separate maintenance payment" means any payment in cash if—
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

---

(c) Effective Date.—The amendments made by this section shall apply to—
> (1) any divorce or separation instrument (as defined in section 71(b)(2) of the Internal Revenue Code of 1986 as in effect before the date of the enactment of this Act [Enacted: Dec. 22, 2017]) executed after December 31, 2018, and
> (2) any divorce or separation instrument (as so defined) executed on or before such date and modified after such date if the modification expressly provides that the amendments made by this section apply to such modification.

The FJOD was executed before December 31, 2018. It is unclear whether the Consent Order, which was executed after December 31, 2018, was a modification of the FJOD as that term is used in TCJA § 11051(c)(2) or merely an implementation of the parties' agreement in the FJOD. However, even if the Consent Order was a modification of the FJOD, it does not expressly provide that the amendments made by TCJA § 11051 apply to the Consent Order. Thus, the repeal does not apply to this case. For simplicity, this Memorandum Opinion refers to the Consent Order as amending paragraph 6 of the FJOD.

**[\*6]**                         (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

In 1984 Congress enacted section 71, in its pre-TCJA repeal form, specifically to "eliminate the subjective inquiries into intent and the nature of payments that had plagued the courts in favor of a simpler, more objective test." *Hoover v. Commissioner*, 102 F.3d 842, 844–45 (6th Cir. 1996), *aff'g* T.C. Memo. 1995-183. If all four conditions in section 71(b)(1) are met, then a payment is deductible alimony. *Jaffe v. Commissioner*, T.C. Memo. 1999-196, 1999 WL 398130, at \*4. However, if any one or more of them is not met, then the payment is not deductible alimony. *Id.*

III.    *Section 71(b)(1)(D)*

The parties do not dispute that petitioner's payment satisfies the conditions in section 71(b)(1)(A), (B), and (C). But respondent contends that the payment fails to meet the fourth condition, in section 71(b)(1)(D), because petitioner remained liable to make the payment in the event of his ex-wife's death. Specifically, respondent argues that the payment to Ms. Lopez was an equitable distribution of property because the FJOD and the Consent Order did not mention alimony or maintenance and did not provide that the payment obligation in paragraph 6 of the FJOD terminated at Ms. Lopez's death. Respondent also argues that New Jersey caselaw supports his position that paragraph 6 of the FJOD was a division of marital property subject to New Jersey's equitable distribution statute and caselaw.[6] Additionally, respondent argues that the pension payment was an equitable distribution because it was earned during the years that coincided with

---

[6] Specifically, respondent argues that New Jersey caselaw treats pensions that have been contributed to during the marriage by either partner as marital property subject to division under New Jersey's equitable distribution statute. *See Kikkert v. Kikkert*, 427 A.2d 76, 79–80 (N.J. Super. Ct. App. Div. 1981), *aff'd per curiam*, 438 A.2d 317 (N.J. 1981); *Weir v. Weir*, 413 A.2d 638, 640 (N.J. Super. Ct. Ch. Div. 1980). We do not address this argument as we have repeatedly held that classification of a payment under state law does not preclude it from being alimony for federal income tax purposes. *See Proctor v. Commissioner*, 129 T.C. 92, 95 (2007) (citing *Benedict v. Commissioner*, 82 T.C. 573, 577 (1984)). Rather, below we analyze whether the payment satisfied the requirements under section 71(b)(1)(D) as informed by our caselaw.

[*7] the DiTullios' marriage and the parties' actions indicate that they considered it an equitable distribution of a marital asset. Finally, respondent argues that the PERS regulations, which petitioner relies on as discussed below, do not apply because no QDRO was executed and served on and accepted by PERS.

Petitioner counters that the FJOD "should be read to encompass a termination upon death condition because it unambiguously provides for a [QDRO]." Petitioner further argues that because the FJOD unambiguously provides for a QDRO, it supports the conclusion that the parties understood that the PERS regulations would be followed, including the PERS regulation which states that "[a]ll withholdings mandated under a matrimonial order shall cease upon the death of either the retired member or the alternate payee." N.J. Admin. Code § 17:1-1.12(c) (2009). Finally, petitioner argues that the Consent Order does not change the analysis that petitioner would not remain liable to make the payment in the event of Ms. Lopez's death because the Consent Order is best viewed as a satisfaction of the FJOD, which incorporated the limitations of PERS. As discussed below, we hold that petitioner remained liable to make the payment in the event of his ex-wife's death. Therefore, the $50,000 payment did not meet the requirements of section 71(b)(1)(D) and did not qualify as deductible alimony.

To meet the requirements under section 71(b)(1)(D), the payor must have no liability to make the payments after the death of the payee spouse. *See Kean v. Commissioner*, 407 F.3d 186, 191 (3d Cir. 2005), *aff'g* T.C. Memo. 2003-163. "If the divorce instrument is silent as to the existence of a postdeath obligation, the requirements of section 71(b)(1)(D) may still be satisfied if the payments terminate upon the payee spouse's death by operation of State law." *Stedman v. Commissioner*, T.C. Memo. 2008-239, 2008 WL 4704143, at *2 (citing *Johanson v. Commissioner*, 541 F.3d 973, 977 (9th Cir. 2008), *aff'g* T.C. Memo. 2006-105). However, if State law is ambiguous on this point, a "federal court will not engage in complex, subjective inquiries under state law; rather, the court will read the divorce instrument and make its own determination based on the language of the document." *Hoover*, 102 F.3d at 846; *see also Kean v. Commissioner*, 407 F.3d at 191; *Okerson v. Commissioner*, 123 T.C. 258, 264–65 (2004); *Logue v. Commissioner*, T.C. Memo. 2017-234, at *8–9; *Stedman v. Commissioner*, 2008 WL 4704143, at *2.

[*8]    The parties agree that the FJOD and the Consent Order are silent as to whether the payment obligation in paragraph 6 of the FJOD would terminate in the event of Ms. Lopez's death. Thus, we must consider whether the payment obligation would terminate by operation of New Jersey State law. Respondent states that New Jersey State law is ambiguous as to the termination of payments upon a payee's death when there is no unambiguous termination provision in the divorce instrument. Petitioner counters that the payment obligation would have terminated under New Jersey State law because the reference to a "QDRO" in paragraph 6 of the FJOD incorporated the PERS regulation which provides that withholdings under a matrimonial order will cease upon the death of a payee spouse. Petitioner's reliance on the PERS regulations is misplaced because a predicate for their application was that the parties would prepare and execute a QDRO. We do not think that simply referring to a QDRO in paragraph 6 of the FJOD automatically incorporated the PERS regulations and the termination rule that petitioner relies on.

Setting aside the PERS regulations, which we found do not apply in this case, New Jersey law is silent as to whether the obligation to make maintenance payments terminates on the death of the payee spouse when there is no unambiguous termination provision in the divorce instrument. The parties point us to no caselaw, and we have discovered none, that expressly states whether the obligation of maintenance terminates upon the death of the payee spouse. Thus, New Jersey State law is ambiguous as to the termination of payments upon the payee's death.

Because New Jersey State law is ambiguous on whether the payment obligation would have terminated upon the payee's death, we must analyze the FJOD and the Consent Order and make our own determination based on the terms of the documents. Paragraph 6 of the FJOD stated that petitioner had pension benefits earned while he was an employee for the State of New Jersey and that he had a pending application for a disability pension retroactive to the date of his disability. It further stated that if he received those benefits, then Ms. Lopez would be entitled to a share of the retroactive benefits. The FJOD also stated that a QDRO "shall be prepared" and the cost for preparation shall be shared by both parties. Notably, it did not discuss or refer to Ms. Lopez's potential share of petitioner's pension benefits as alimony or maintenance or indicate that his payment obligation to her under paragraph 6 would terminate upon her death.

**[\*9]** The Consent Order stated that the parties agreed that "John DiTullio shall give Lisa Lopez $50,000 of his retroactive disability benefits as full satisfaction of any entitlement [Ms. Lopez] might be owed" under paragraph 6 of the FJOD. It continued that no QDRO was necessary and that he would "provide wife with payment upon receipt of signed and notarized consent order." It concluded with the statement that he had no other obligation to share any pension benefit with her. Similar to paragraph 6 of the FJOD, the Consent Order did not discuss or refer to the payment as alimony or maintenance or indicate that his payment obligation to her would terminate upon her death.

We read the plain text of paragraph 6 of the FJOD, as amended by the Consent Order, to create an obligation that survived the death of the recipient spouse. In *Webb v. Commissioner*, T.C. Memo. 1990-540, 60 T.C.M. (CCH) 1024, 1027, the Court was asked to decide whether an obligation containing the phrase "[t]he Husband shall pay" created an obligation which survived the death of the recipient spouse. Highlighting the fact that "the statute speaks in terms of 'liability,'" we held that the above-quoted phrase "[u]nquestionably . . . created a liability which would have been enforceable by [the recipient spouse's] estate had she died after the execution of the agreement but before the payments were actually made." *Id.*

Here, paragraph 6 of the FJOD stated that if petitioner received the retroactive disability benefits, "Wife shall be entitled to share in those retroactive benefits . . . limited to the amount that she would otherwise be entitled to based upon a calculation of [petitioner's] ordinary retirement benefits." Similarly, the Consent Order stated that "John DiTullio shall give Lisa Lopez $50,000 of his retroactive disability benefits as full satisfaction of any entitlement [Ms. Lopez] might be owed" under paragraph 6 of the FJOD.[7] Thus, while paragraph 6 of the FJOD may have created a conditional obligation that if petitioner received retroactive disability benefits he would pay Ms. Lopez a share of those benefits, the execution of the Consent Order made petitioner's obligation to pay Ms. Lopez $50,000 of the retroactive disability benefits that he received, unqualified. The plain text of paragraph 6 of the FJOD and the Consent Order closely resembles the text that we considered in

---

[7] The Consent Order further provides that "no [QDRO] shall be necessary as husband has received the check from PERS and will provide wife with payment upon receipt of signed and notarized consent order." The contractual phrase "will provide wife with payment" is also similar to the obligation that we considered in *Webb* and indicates that the Consent Order created a liability that would have survived petitioner's ex-wife's death.

**[\*10]** *Webb.* We think that the phrase "Wife shall be entitled" in paragraph 6 of the FJOD and the phrase "John DiTullio shall give Lisa Lopez $50,000" in the Consent Order, are sufficiently similar to the text in *Webb*, 60 T.C.M. (CCH) at 1027 ("The Husband shall pay."), that when the agreements are read together these phrases created an obligation which survived the death of the recipient spouse.

Petitioner argues that the preexisting FJOD distinguishes this case from *Webb* because the obligation to pay arose under the FJOD, "which incorporated the limitations of PERS." Petitioner's attempt to distinguish this case from *Webb* is unconvincing. As discussed above, the limitations of PERS were not incorporated into the FJOD. Additionally, paragraph 6 of the FJOD created a conditional obligation to pay Ms. Lopez that crystalized only when the parties executed the Consent Order. The plain text of the FJOD as amended by the Consent Order, created a liability that would have been enforceable by his ex-wife's estate if she had died after executing the agreement but before the payment was made. Therefore, petitioner's obligation to make the payment at issue survived the death of his ex-wife, and that payment was not alimony under section 71(b)(1) or deductible under section 215(a).

We have considered all other arguments made and facts presented in reaching our decision, and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent with respect to the deficiency, and for petitioner with respect to the section 6662(a) penalty.*